USCA1 Opinion

 

 March 28, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1725 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. STANLEY LABOVITZ, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin and Stahl, Circuit Judges. ______________ ____________________ Stanley Labovitz on brief pro se. ________________ Donald K. Stern, United States Attorney, and Mark J. Balthazard, ________________ __________________ Assistant United States Attorney, on brief for appellee. ____________________ ____________________ Per Curiam. On December 6, 1993, appellant Stanley __________ Labovitz pleaded guilty to thirteen counts of bankruptcy fraud. Approximately eleven weeks later, still before sentencing, appellant moved to withdraw his plea pursuant to Fed. R. Crim. P. 32(d). The district court denied this motion and subsequently imposed sentence. This appeal followed. For the following reasons, we affirm. BACKGROUND During the 1980's, appellant was an attorney practicing bankruptcy and debt-collection law. Appellant also invested in real estate, and he owned or controlled various real estate entities including Hartwell Realty Corporation ("Hartwell"), 316 Main Street, Inc. ("316 Main"), and S.S.L., Inc. ("S.S.L."). On April 27, 1993, a federal grand jury returned an indictment charging appellant with twenty-three counts of bankruptcy fraud. See 18 U.S.C. 152. In ___ particular, the indictment charged appellant with engaging in a scheme to defraud by filing bankruptcy petitions for Hartwell, 316 Main, S.S.L., and himself personally, and thereafter transferring and concealing assets. The indictment also charged him with providing materially false information in connection with these petitions. On December 3, 1993, appellant entered into a plea agreement with the government under which he agreed to plead guilty to counts 1, 3, 7-8, 10, and 16-23 of the indictment. The change of plea hearing was held on December 6, 1993. At the hearing, the prosecutor summarized the evidence the government would have presented at trial. The district court accepted the change of plea and set a date for sentencing. On February 24, 1994, appellant filed a motion to withdraw his guilty plea. In his motion, he primarily argued that the district court's plea colloquy failed to comply with the requirements of Fed. R. Crim. P. 11. Following a hearing on March 25, 1994, the district court orally denied this motion on the grounds that there is no "fair and just reason" to allow the withdrawal. A sentencing hearing was conducted, and sentence was imposed, on June 16, 1994. In the course of the hearing, the district court made specific findings that the amount of loss was $137,217.00 on Count 1; $34,356.67 on Count 7; $26,758.26 on Count 20, $5,206.89 on Count 21; and $25,000.00 on Count 22. As a result, the district court, acting pursuant to U.S.S.G. 2F1.1, adjusted appellant's base offense level of 6 upward by 8 levels to reflect a loss of between $200,000.00 and $350,000.00.1 The court imposed a fifteen month sentence of imprisonment, the bottom end of the applicable guideline range, followed by a period of supervised release. The court also ordered restitution of $231,573.67. DISCUSSION  ____________________ 1. The court then made a two level increase to reflect more than minimal planning and a two level downward adjustment for acceptance of responsibility, to reach a total offense level of 14. Based on appellant's criminal history category I, his sentencing range was fifteen to twenty-one months. -3- 3 A. THE DENIAL OF APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA. A district court "may permit" a defendant to withdraw his guilty plea prior to sentencing for any "fair and just" reason. United States v. Daniels, 821 F.2d 76, 78 (1st Cir. _____________ _______ 1987); Fed. R. Crim. P. 32(d). We have recently reiterated that: There are several factors to consider in determining whether a defendant has met this burden, the most significant of which is whether the plea was knowing, voluntary and intelligent within the meaning of Rule 11. The other factors include: 1) the force and plausibility of the proffered reason; 2) the timing of the request; 3) whether the defendant has asserted his legal innocence; and 4) whether the parties had reached a plea agreement. United States v. Cotal-Crespo, 1995 WL 27378 at *1 (1st Cir. ______________ ____________ Jan. 30, 1995) (citations omitted). We will reverse the district court only for an error of law or for demonstrable abuse of discretion. Id. at *3. We do not think that ___ reversal is warranted here.2 Appellant argues that the district court erred in requiring him to provide a "strong" rather than "fair and just" reason for withdrawal, and that it unfairly held him to this higher standard because he was an attorney. We find no error. Appellant had argued below, inter alia, that the _____ ____  ____________________ 2. Arguably, an outright violation of Rule 11 might require the court to allow the withdrawal of a guilty plea unless the violation was found to be harmless. See United States v. ___ _____________ Raineri, 42 F.3d 36, 41 (1st Cir. 1994). Here, however, we _______ find no violation of Rule 11 at all. -4- 4 district court failed to adequately inform him of, and determine that he understood, the nature of the charges. See ___ Fed. R. Crim. P. 11(c). The district court was entitled to consider appellant's background and sophistication in determining whether these core concerns of Rule 11 were satisfied. See United States v. Allard, 926 F.2d 1237, 1245 ___ _____________ ______ (1st Cir. 1991) ("The manner in which the charge is explained and the method for determining the defendant's understanding necessarily vary from case to case depending upon the capacity of the defendant and the attendant circumstances."). The court's ruling on the motion to withdraw leaves no doubt that it evaluated the motion under the correct legal standard, and that it denied the motion because it found no "fair and just" reason for withdrawal. Appellant also argues that he should have been allowed to withdraw his guilty plea because there was insufficient factual basis for it. See Fed. R. Crim. P. 11(f). In ___ support of this argument, he draws our attention to various statements he made at the change of plea hearing which could be construed as denials by him that he had the intent to defraud. See United States v. Grant, 971 F.2d 799, 802 (1st ___ _____________ _____ Cir. 1992) (discussing elements of bankruptcy fraud). In addition, appellant cites to various documents, appended to his brief, which he suggests demonstrates his innocence of the crimes charged in counts 1 and 20. -5- 5 It is well-settled that the prosecutor's statement of facts on the record can satisfy the requirement of a factual basis for the plea. See, e.g., United States v. Ray, 828 ___ ____ _____________ ___ F.2d 399, 405-06 (7th Cir. 1987), cert. denied, 485 U.S. 964 ____________ (1988). This statement of facts need not be uncontroverted. A court may accept a plea even when the defendant protests his innocence if there is a strong evidence in the record of the defendant's actual guilt. North Carolina v. Alford, 400 ______________ ______ U.S. 25, 37 (1970); United States v. Walsh, 7 F.3d 1064, 1066 _____________ _____ (1st Cir. 1993). Similarly, when the district court establishes a sufficient factual basis for the plea at the Rule 11 hearing, the guilty plea may stand even if the defendant later claims innocence and challenges the plea. See United States v. Keiswetter, 860 F.2d 992, 998 (10th Cir. ___ _____________ __________ 1988) (Moore, J., dissenting); United States v. Owen, 858 ______________ ____ F.2d 1514, 1516-17 & n.2 (11th Cir. 1988). In the instant case, the prosecutor's proffer provided ample factual basis for accepting the guilty plea. In this proffer, the prosecutor detailed a lengthy pattern of omissions, material misstatements, and transfers of bankruptcy estate property by appellant. Given the sheer number of "mistakes," the size of the assets concealed, and appellant's many years of experience practicing bankruptcy law, we think the judge was entitled to conclude that a -6- 6 substantial basis existed for believing that appellant's actions were knowing and fraudulent.3 The documents that appellant cites do not alter our conclusion. Count 1, which relates to the Hartwell bankruptcy, charged appellant with failing to disclose approximately $350,000.00 in loans owing to Hartwell from appellant and his business partner. Appellant contends that there can be no fraudulent intent since the final decision to treat the $350,000.00 as a loan to officers (rather than compensation) was not made until November 1991, roughly ten months after he filed Hartwell's bankruptcy petition.4 However, appellant should have disclosed the asset even if its status at the time of filing was uncertain. See United ___ ______ States v. Cherek, 734 F.2d 1248, 1254 (7th Cir. 1984) ("It is ______ ______ a reasonable reading of 18 U.S.C. 152 to conclude that the  ____________________ 3. We add that the district judge made a finding on the record that defendant's plea of guilty is "supported by an independent basis in fact" for each of the "essential elements" of the offense charged. We do not think that the judge's question about the requisite mental state for bankruptcy fraud, asked at a later proceeding, warrants an inference that he was confused about this element and did not fulfill his duty under Rule 11(f). 4. In support of this claim, appellant draws our attention to two affidavits of Curtis Feldman, accountant for Hartwell. Although these affidavits are outside the record, we consider the information they contain because it was proffered to the district court at sentencing. We note, however, that the remaining documents appellant cites in connection with count 1--Hartwell's bankruptcy petition and amendment--cannot inform our decision because they are not part of the record on direct appeal. See Fed. R. App. P. 10(a). ___ -7- 7 statute requires a bankrupt to disclose the existence of assets whose immediate status is uncertain."), cert. denied, ____________ 471 U.S. 1014 (1985). Moreover, appellant did not disclose the asset even after November 1991, and the indictment charged him with a "continuing failure" to disclose through October 1992. Under the circumstances, the district court could reasonably conclude that he was guilty. Count 20, which relates to appellant's personal bankruptcy, charged him with failing to disclose approximately $25,000 worth of Keystone Fund money market shares which he owned. Appellant contends that various documents, submitted to the district court at sentencing, prove his lack of fraudulent intent. These documents indicate that in February 1986, appellant requested that these shares be transferred to his wife. However, the government proffered evidence that appellant received monthly statement and interest payments from Keystone, mailed to his law office, both before and after filing his bankruptcy petition in May 1992. Under the circumstances, there was a strong basis for concluding that appellant knew the transfer had not occurred and intended to conceal the asset. The fact that appellant reported the asset to the bankruptcy trustee in February 1993, two months prior to his indictment, does not alter our conclusion. There is evidence in the record which suggests that he knew by then that he was under -8- 8 criminal investigation in connection with several bankruptcy filings. Finally, having determined that appellant's principal points are without merit, we consider the traditional factors relevant to the review of a change of plea request. The record reveals that appellant understood the substance of the charges against him, and suggests that he made a calculated decision that it was in his interest to plead guilty. The plea was part of a quid pro quo negotiated with the ____ ___ ___ government. See United States v. Pellerito, 878 F.2d 1535, ___ ______________ _________ 1541 (1st Cir. 1989). A defendant is not entitled to withdraw his guilty plea simply because he asserts a subjective belief in his innocence. See United States v. ___ ______________ Ramos, 810 F.2d 308, 312 (1st Cir. 1987). Given the totality _____ of the circumstances, we cannot say the district court abused its discretion in finding no "fair and just reason" for retraction. B. INEFFECTIVE ASSISTANCE OF COUNSEL. Ordinarily, we do not address ineffective assistance of counsel arguments on direct appeal. This case is no exception. Appellant argues that trial counsel was ineffective because he pressured him into pleading guilty and misinformed him that it was too late to change his mind after signing the plea agreement. These charges depend upon evidentiary matters which are best considered by the district -9- 9 court in the first instance. See United States v. Mala, 7 ___ _____________ ____ F.3d 1058, 1063 (1st Cir. 1993) (holding that absent extraordinary circumstances, fact specific claims asserting ineffective assistance of counsel are not cognizable on direct appeal), cert. denied, 114 S. Ct. 1839 (1994). _____________ Accordingly, appellant's claim of inadequate assistance is not properly before us. C. SENTENCING. 1. The District Court's Loss Calculation. Appellant argues that the district court erred in determining the amount of loss. He does not contest the district court's loss determination of $34,456.67 for count 7. However, he contends that there was no loss at all involved in counts 1, 20, 21, and 22. Based on appellant's own calculation, the district court should have adjusted the base offense level upward by 4 levels to reflect a loss of between $20,000.00 and $40,000.00, rather than 8 levels to reflect a loss of between $200,000.00 and $350,000.00. We find no basis for a remand. The district court's loss determination of $137,217.00 for count 1 was based on appellant's portion of the $350,000.00 loan, owing to Hartwell, which he failed to disclose in Hartwell's bankruptcy documents. Appellant does not dispute that he owed this amount to Hartwell. Instead, he contends that there was no intended loss since it was not -10- 10 finally determined that the $137,217.00 was a loan and, thus, a corporate asset, until some months after he filed Hartwell's bankruptcy petition. He further argues that there was no actual loss to creditors because Hartwell's assets, at least at the time of filing, exceeded its debts. We think the district court could properly determine that there was both an intended and actual loss of $137,217.00. The court could find an intended loss of $137,217.00 because appellant continued to conceal this asset even after, by his own admission, the final accounting determination was made. The court could find an actual loss of $137,217.00 because, independent of any loss to creditors, that much remained owing to the debtor and bankruptcy estate at the time of sentencing. See United States v. Edgar, 971 ___ _____________ _____ F.2d 89, 95 (8th Cir. 1992) (recognizing that in bankruptcy fraud, the three entities that can be injured are the debtor, the bankruptcy estate, and the creditors).5 The district court's loss determination of $26,758.26 on count 20 was based on the value of the Keystone shares appellant failed to disclose in his personal bankruptcy documents. Appellant does not dispute the value of these  ____________________ 5. There might be some complications with the loss finding because of appellant's own stake in Hartwell, although we think those complications might be answered in this case. The issue need not be pursued because appellant does not advance his ownership interest in Hartwell as a ground for limiting the amount of loss. -11- 11 shares. Rather, he argues that there was no loss since he disclosed the Keystone Fund to the bankruptcy court in February 1993, two months before his indictment. We think the district court could properly find an intended loss of $26,758.26 for the same reasons, discussed above, that it could properly find an intent to defraud. Since appellant did not object at sentencing to the loss determination of $5,206.89 on count 21, we review only for plain error. Fed. R. Crim. P. 52(b). Based on facts which were uncontested below, the court was entitled to find that appellant concealed his one hundred per cent ownership of Bass River Management, Inc. when filing for personal bankruptcy, and that he later transferred this amount from Bass River for his personal use.6 Under the circumstances, there was no plain error in determining the loss to be $ 5,206.89. We need not reach appellant's argument that the district court erred in finding a loss of $25,000 on count 22. The total amount of loss involved in counts 1, 7, 20, and 22  ____________________ 6. Appellant does attempt to dispute on appeal that he transferred these funds from Bass River. This challenge comes too late. We have repeatedly held that "facts stated in presentence reports are deemed admitted if they are not challenged in the district court." United States v. ______________ O'Connor, 28 F.3d 218, 222 (1st Cir. 1994) (quoting United ________ ______ States v. Bregnard, 951 F.2d 457, 460 (1st Cir. 1991)). We ______ ________ add that the documents appellant cites, copies of canceled checks written on Bass Rivers' account, are not part of the record on direct appeal. -12- 12 already falls between $200,000.00 and $350,000.00. Accordingly, any error in determining the loss for count 22 is harmless. 2. Restitution. Appellant argues that the district court erred in failing to determine that he could afford to make restitution. He points out that he is currently without employment and has limited assets. Since this issue was not preserved below, we review for plain error. When issuing a restitution order, the district court must "consider" the financial condition of the defendant. 18 U.S.C. 3664(a). However, there is no requirement that the defendant be found able to pay now. United States v. Lombardi, 5 F.3d 568, 573 _____________ ________ (1st Cir. 1993). Appellant is well-educated and worked successfully for many years. There is every reason to expect that he will be gainfully employed in the future even if he is unable to return to the practice of law. Significantly, the district court left the payment schedule to be determined by probation. We are satisfied that the district court considered appellant's financial situation, and that it did not abuse its considerable discretion. Accordingly, we find no plain error in the court's restitution order. Affirmed. ________ -13- 13