268 A.2d 433.

STATE *vs.* SANDRA J. BUTLER.

AUGUST 5, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

490

POWERS, J. This indictment for murder was tried to a Superior Court justice and a jury which returned a verdict of guilty of murder in the second degree. The case is before us on defendant's bill of exceptions, the sole exception pressed being to the trial justice's refusal to instruct the jury on the issue of self-defense.

In this state, G. L. 1956 (1969 Reenactment) §8-2-38,[1] obliges the trial justice to give correct instructions as to those rules of law that of necessity must be applied to the issues raised at the trial in order to secure a fair trial. *Macaruso* v. *Massart*, 96 R. I. 168, 190 A.2d 14. Indeed, absent such a statutory mandate, it is almost universally held that

---

[1]As enacted, this section provides:

"Instruction to trial jury.—In every case, civil and criminal, tried in the superior court with a jury, the justice presiding shall instruct the jury in the law relating to the same, and may sum up the evidence therein to the jury whenever he may deem it advisable so to do; but any material misstatement of the testimony by him may be excepted to by the party aggrieved."

where there is evidence in support of any defense offered by an accused, which raises an issue of fact favorable to him, the court should present the issue by an affirmative instruction which fully and fairly declares the law applicable thereto. 23A C.J.S. *Criminal Law* §1199 at 509 (1961) and cases therein cited.

Here, the trial justice denied defendant's request to instruct the jury that she acted in self-defense on the ground that there was no evidence which the jury might consider which raised self-defense as an issue. Conversely, of course, if there is no evidence on which the jury could find that the defendant acted in self-defense, it is not error for the trial justice to refuse to instruct as requested for the reason that, absent some evidence to which the requested instruction would be applicable, such instruction would tend to mislead and confuse. *State* v. *Winston,* 105 R. I. 447, 252 A.2d 354; *State* v. *Shea,* 77 R. I. 373, 75 A.2d 294; *State* v. *Crough,* 89 R. I. 338, 152 A.2d 644. When, therefore, as here, it is on the trial justice's view of the evidence that he concludes that the requested instruction is not applicable, the effect of the defendant's exception to such ruling is to require this court to independently review the evidence and determine whether the trial justice's concept was correct.

Fairly summarized, the evidence, in light of which the trial justice was requested and refused to instruct on the issue of self-defense is as follows. On September 6, 1966, one William Sheridan was a patron at a Providence bar during the early evening hours. He departed the premises contemporaneously with, if not in the company of defendant, and subsequently with defendant, entered an automobile being operated by one Joe Louis Walker. At approximately 9:30 P.M., a witness observed an automobile stop in front of 497 Washington Street in Providence and two persons alight therefrom. One appeared to be a man

and the other a woman. The couple walked into an adjacent vacant lot[2] and immediately thereafter the witness heard what sounded like "someone was hitting someone with something, with a rock or something." Following this, the witness observed what appeared to be a woman leave the area from which the sounds came and return to the waiting car which thereupon departed. According to this witness what appeared to be the same car returned in some five minutes but drove past the lot.

Be that as it may, the witness further testified that after the car finally departed, she went into the lot to investigate and found said William Sheridan lying face down behind a bush. He was covered with blood, one shoe was off and his pockets were turned inside out. The witness returned to her home some 30 feet from the scene. Some ten minutes thereafter, her brother arrived home and drove his car into the lot. He heard a dog barking and upon investigating, he discovered Sheridan, although breathing, unconscious and covered with blood. He notified the rescue squad which arrived at the scene with a contingent of Providence police. He assisted in directing them to the spot where Sheridan was lying.

It is uncontroverted that the rescue squad transported Sheridan to the Rhode Island Hospital where he was admitted in a state of coma, unresponsive and with an observable laceration in front of his head above the right eye. Signed into the hospital at 10:47 on the evening of September 6, 1966, Sheridan died some 27 hours later. It would appear that Sheridan never regained consciousness since there is no suggestion in the record of any statement attributable to him.

As a consequence of their investigation, the Providence

---

[2]While all witnesses generally agree that the lot is sandy in character, photographs in evidence disclose the lot to have been more or less littered with debris and rocks scattered about.

police apprehended defendant. At trial the state offered in evidence oral and written statements made by defendant to the police that she had knocked Sheridan down by pushing and then hit him in the back of the head with a brick or stone to keep him quiet while she emptied his pockets. The defendant objected to their admission, and in the absence of the jury, the trial justice held a lengthy hearing to determine whether admitting such statements in evidence would be violative of defendant's constitutional guarantee of due process. At the conclusion of said hearing, the trial justice admitted the challenged statements on a finding that beyond reasonable doubt they were voluntary and not the result of force, coercion or promises. He further found that prior to making these statements, defendant had been given the four preliminary warnings mandated by the United States Supreme Court in *Miranda v. Arizona,* 384 U. S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694.

The defendant testified in her own defense. She repudiated the oral statements admitted over objection and claimed that she had been forced to sign a blank sheet of paper on which the oral statements attributed to her were reduced to writing by the interrogating police officer. She gave her account of what happened and insisted that her testimony at trial was the story she related to the police.

In her testimony, defendant admitted having met Sheridan in a Providence drinking establishment where he had bought her several drinks. It is also her testimony that when she left these premises, Sheridan also left and requested her to provide him with a ride to another drinking establishment. Continuing, she related how she conveyed this request to Joe Louis Walker who agreed to drive them in his car. En route to this second establishment, according to defendant, Sheridan asked that they stop so that he, Sheridan, could urinate. According to defendant's version, Walker stopped on Washington Street at a vacant

lot where Sheridan alighted. Because, defendant testified, Sheridan was intoxicated and might have stumbled, she helped guide him to the rear of the lot in question where, according to her, she turned her back to afford Sheridan privacy.

It is at this point in defendant's presentation of her defense that the pivotal evidence was adduced by her. Having turned her back, defendant testified, Sheridan seized her from behind and grabbed her by the throat which caused her to panic. Her specific testimony on this point is as follows:

> "He had me like this here (indicating) and I panicked, because I was saying to myself, 'Oh, God. Is this the way I'm going to die?' And I just somehow, I just got my arms under his, and I just went like this here. (Indicating) I pushed him."

Asked what happened next, defendant replied:

> "Well, he fell, and the reason why I did not go back to see how he was is because as we were struggling, the dog was that close to us that it felt almost as thought [sic] the dog was on top of us."

The defendant was then asked what she meant by struggling and replied: "You know, trying to get his hands off of my neck."

Having pushed or shoved Sheridan to the ground, it is defendant's testimony that she ran to the waiting car. While so running, defendant insisted, Sheridan was "hollering and calling me all kinds of names." This name calling disturbed her, she testified, because there was a car parked in the lot, the occupants of which, defendant assumed, were audience to Sheridan's alleged shouting. Parenthetically, the presence of a car in the lot, at the time the witness who summoned the rescue squad arrived, was testified to by him.

At this juncture, the evidence bearing on the cause of Sheridan's death becomes significant. An autopsy was performed by a pathologist, Dr. Salvatore A. Allegra, at which

State Medical Examiner, Dr. James J. Flanagan, and Dr. Quinto, Dr. Allegra's assistant, were present and assisting. Doctors Allegra and Flanagan were both called to testify regarding the autopsy report. It was admitted in evidence and states in summary:

"Probable cause of death: HEAD CONCUSSION WITH MASSIVE SUBARACHNOID AND INTRA-VENTRICULAR HEMORRHAGES."

It is the essence of Dr. Allegra's direct testimony that the concussion to the head and multiple hemorrhages probably resulted from several violent blows, an opinion which Dr. Flanagan corroborated. However, when the medical examiner called Dr. Allegra into the case, he informed the pathologist that the deceased "was either hit or had fallen, and had had a head injury." On cross-examination, Dr. Allegra conceded that the injuries to the head were consistent with either blows or falls. The medical examiner, however, adhered to his opinion that if the injuries to the head had resulted from falls there would be other injuries which were absent.

It is manifest from the trial justice's decision refusing to instruct on the issue of self-defense that he believed the evidence adduced by defendant was designed to establish her innocence, or stated otherwise, her defense was that she had not inflicted the fatal injuries. We think that such a view misconceives the full thrust of defendant's testimony. What she was saying, it seems to us, was that while she committed a battery on the deceased, she could not believe that the fatal injuries were occasioned thereby, but if they were, the battery was a self-defensive reaction to an unprovoked assault. In other words, defendant was testifying to separate but consistent defenses.

The state concedes that there was limited evidence raising the issue of self-defense, but argues that the trial justice was not impressed thereby. This argument, however, completely misconceives the trial justice's obligation. The

fact that a trial justice does not believe the accused's defense does not alter his obligation to submit such defense to the jury under proper instructions. *People* v. *Carmen,* 36 Cal. 2d 768, 228 P.2d 281.

However slight and tenuous the evidence may be on which the self-defense hypothesis is advanced, it is nevertheless there for the jury's consideration, and the fair trial concept requires that the jury consider it under an appropriate instruction. In *Commonwealth* v. *Campbell,* 352 Mass. 387, 398, 226 N.E.2d 211, 219, the court cited with approval from *People* v. *Carmen, supra,* wherein the California court held:

> " 'The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. . . . That is a question within the exclusive province of the jury. However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true.' " 36 Cal.2d 768, 773, 228 P.2d 281, 285.

To the same effect see 23A C.J.S. *Criminal Law,* §1199 at 511 (1961), n. 76 (Weak or doubtful evidence) and the cases therein cited.

Here, there was evidence before the jury that the condition of the lot was such as to be treacherous terrain for an intoxicated person; that the deceased was intoxicated and, in all probability, rendered further incapacitated by the effects of the fall resulting from defendant's push; that under such circumstances the deceased could have fallen several times and such falls were not inconsistent with the injuries sustained. However tenuous such hypothesis may be, the weight of the evidence on which it rests is exclusively for the jury.

We are constrained to conclude, therefore, that on the state of the evidence in the case at bar, defendant advances a hypothesis which entitled her to have the jury instructed

497

on the issue of self-defense, and the trial justice's refusal to do so was prejudicial.

The defendant's exception is sustained, and the case is remitted to the Superior Court for further proceedings.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Scott K. Keefer,* Special Asst. Attorney General, for plaintiff.

*Bucci & Rao, Carmine A. Rao,* for defendant.