**STATE**

v.

Anthony J. DiCHRISTOFARO.

No. 2003–416–C.A.

Supreme Court of Rhode Island.

May 27, 2004.

Christopher R. Bush, Esq., Providence, for Plaintiff.

Catherine A. Gibran, Esq., for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on April 7, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. Neither party has filed a supplemental memorandum. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.[1]

On the evening of June 23, 2001, Brittany Atella (Brittany) and Aimee Holihen (Aimee), both fourteen years old, walked from a friend's home in West Warwick to a nearby convenience store to buy popcorn. As the girls neared the store, they were approached by the defendant, Anthony J. DiChristofaro (DiChristofaro or defendant), who spoke to the girls and asked them how they were doing. After briefly responding, the girls entered the store, purchased a box of popcorn, and then headed towards a friend's house. The defendant, however, followed the girls, telling them: "I'm 31 and I know how to party." The girls ignored him and continued walking, closely followed by defendant, until they came upon their friend, Michael Young (Michael).

Concerned about defendant's advances, the girls told Michael that they were being followed. Noting that Brittany looked "nervous and a little scared," Michael agreed to accompany the girls to their destination. Before they continued walking, however, Michael ordered defendant to leave and challenged him to a fight. Making no response, defendant remained close by.

Shortly thereafter, two of Michael and Brittany's adult acquaintances, Al Medeiros and Julie Bell, pulled their vehicle over and spoke to the three teenagers. After the teenagers told the adults about defendant's behavior, the two adults got out of their vehicle and ordered defendant to leave. The defendant ran away.

For approximately thirty minutes, the teenagers remained at the scene with the adults until Brittany decided to return home. As Michael accompanied the girls to Brittany's house, defendant reappeared. DiChristofaro walked up to the teenagers holding his right hand under his shirt. Both Brittany and Michael testified that defendant warned them he had a gun and he would kill them. As the teenagers turned away from defendant and began walking, defendant struck Michael's back with a broken beer bottle. Brittany, whose hand was on Michael's back, took the brunt of the blow, and was seriously injured, sustaining several severed tendons in her left hand. After this attack, defendant ran off into a nearby wooded area.

Officer Peter Appollonio (Officer Appollonio) of the West Warwick police searched the area and found defendant at the rear of his residence. Despite Officer Appollonio's orders to "stop and get down on the

---

1. The defendant previously was before the Supreme Court challenging an adjudication of probation violation arising from these facts. *See State v. DiChristofaro,* 842 A.2d 1075 (R.I. 2004) (per curiam).

ground," defendant, who had removed his shirt and was soiled with dirt and grass, replied "No. I didn't do anything. I was just gardening." The policeman subdued and arrested defendant.

On August 2, 2001, defendant was charged with two counts of assault with a dangerous weapon (ADW) and one count of resisting arrest. After a jury trial, defendant was convicted on all three counts. The trial justice denied defendant's motion for a new trial and sentenced him to twenty years, with ten years to serve on the first ADW count, twenty years suspended and probation on the second ADW count, and one year to serve for resisting arrest. All three sentences were to run consecutively to an eight-year suspended sentence that defendant was serving as a probation violator. *See* note 1, *ante*. On appeal, defendant asserts that the trial justice erred in denying defendant's motion for a new trial and for refusing to instruct the jury on self-defense.

■ Pointing to the "flimsy and suspiciously-motivated testimony [of] sneaky teens" and the absence of corroborating evidence proffered by the state, defendant asserts that the jury's verdict on the two ADW counts was against the weight and sufficiency of the evidence, and as such, he was entitled to a new trial. "When ruling on a motion for a new trial, the trial justice acts as a thirteenth juror and independently evaluates the credibility of the witnesses and the weight of the evidence." *State v. Sosa*, 839 A.2d 519, 529 (R.I.2003) (citing *State v. Otero*, 788 A.2d 469, 472 (R.I. 2002)). If the trial justice has conducted an independent review of the evidence and articulated an adequate rationale for denying the motion for a new trial, "that decision will be given great weight and will not be disturbed unless the trial justice 'overlooked or misconceived material evidence relating to a critical issue or if the justice was otherwise clearly wrong.'" *Otero*, 788 A.2d at 472 (quoting *State v. Bleau*, 668 A.2d 642, 646 (R.I.1995)).

■ In this case, the trial justice followed the required procedure for conducting a new trial analysis. The trial justice made an independent review of the testimony presented in this case, and then addressed the credibility of each witness. After finding the testimony of the state's witnesses to be "consistent and candid," the trial justice considered the evidence in light of the charge to the jury, and concluded that the elements of assault with a dangerous weapon had been satisfied:

> "all [of] the elements of assault with a dangerous weapon, to wit, a glass bottle, particularly a broken beer bottle, * * * were all met by the evidence in the case, as to the assault and the use of the dangerous weapon. And certainly this testimony, which the Court believes, is sufficient to find the defendant guilty beyond a reasonable doubt as to Counts One and Two."

Based upon our review of the record we discern no reason to disturb these findings.

We turn now to defendant's argument that the trial justice erred in refusing to instruct the jury on self-defense. The defendant asserts that because Michael was the initial aggressor there was sufficient evidentiary support to warrant a self-defense instruction pursuant to our holding in *State v. Butler*, 107 R.I. 489, 496, 268 A.2d 433, 436–37 (1970).

■ It is well settled that "where there is evidence in support of any defense offered by an accused, which raises an issue of fact favorable to him, the court should present the issue by an affirmative instruction which fully and fairly declares the law applicable thereto." *Id.* at 491, 268 A.2d at 434. Consequently, regardless of how "slight and tenuous the evidence

may be on which the self-defense hypothesis is advanced, it is nevertheless there for the jury's consideration, and the fair trial concept requires that the jury consider it under an appropriate instruction." *Id.* at 496, 268 A.2d at 436–37. A self-defense instruction is not warranted, however, when there is no evidence on which a jury could find that the defendant acted in self-defense because such an instruction could mislead or confuse the jury and cause speculation about the defendant's state of mind at the time the physical contact occurred. *State v. D'Amario,* 568 A.2d 1383, 1385–86 (R.I.1990) (per curiam). Further, one who is the aggressor is generally not entitled to rely on the defense of self-defense. *See State v. Dellay,* 687 A.2d 435, 438 (R.I.1996) (citing *State v. Martinez,* 652 A.2d 958, 961 (R.I.1995)).

▬ Our review of the record discloses that, upon first encountering the girls and discovering their plight, Michael admittedly challenged defendant to a fight. However, despite Michael's threat, defendant remained at the scene until Michael and Brittany's adult acquaintances arrived and ordered him to leave. It was not until approximately thirty minutes later that defendant returned to the area and again approached the teenagers; he warned them that he had a gun and threatened to kill them. It was only after the teenagers had turned their backs and were walking away from defendant that he struck Michael and Brittany with a broken beer bottle, causing serious bodily injury. These facts do not support the defense of self-defense.

Although Michael was the initial aggressor, this incident occurred thirty minutes before the assault in question. The defendant already had left the area and retreated from any threat that Michael may have posed. However, DiChristofaro returned to the scene, threatened the teenagers, and assaulted them as they turned to walk away. He struck Michael on the back with a broken beer bottle, a cowardly act to be sure, but not a defensive blow. DiChristofaro exercised his right not to testify in this case, and he cannot point to any evidence upon which a jury could find that Michael was the aggressor and the defendant acted in self-defense. In his filing with this Court and again at oral argument, the defendant conceded that the sole basis for his contention that a self-defense instruction was warranted was the initial encounter with Michael that occurred thirty minutes before the crime on trial. The record indicates that there simply was no evidence to support a self-defense instruction and, as such, the trial justice acted within his discretion.

Accordingly, for the reasons set forth herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.