*757 OPINION
Chief Justice SUTTELL,
for the 'Court.
The defendant, Juan Soler, appeals from his convictions for assault with a dangerous weapon and vandalism. He argues that the trial justice erred by refusing to include a self-defense instruction in the jury charge. We agree; and, for the reasons set forth herein, we vacate the defendant’s conviction for felony assault.
I
Facts and Procedural History
On September 5, 2005, an altercation occurred on Pine Street in Central Falls between defendant, his cousins Roy and Lauriz[1] Morillo, and the complaining witness, Anstrom Paula.[2] Everyone involved in the incident knew each other well; defendant and his cousins had met Paula years earlier when Paula started dating one of their other cousins, Felicia Garcia. Paula and Garcia had a child together, became engaged, and lived together for a period of time before the relationship ended. By September 5, 2005, Paula had been dating Garcia’s sister, Amanda Perez; this relationship had been kept secret from her family, however, until Perez’s mother and sister found out about it the day, before the altercation occurred. On the night of September 4, Perez and Paula slept at a friend’s house. Paula drove Perez home around noon on September 5, dropping her off a short distance from her home. Before Paula had pulled away from the curb, defendant, the Morillo brothers, and a friend drove' up beside Paula’s automobile, and the altercation immediately began. Several 'minutes later, Paula was bleeding from his head and had sustained injuries to his neck, back, right elbow, and right leg. In addition, several windows of Paula’s Honda had been broken.
On October 27, 2005, defendant was charged by information with two counts of felony assault pursuant to G.L.1956 § 11-5-2[3] and one count of vandalism pursuant to G.L.1956 § 11-44-1.[4] The criminal information alleged that defendant had assaulted Paula with two dangerous weapons (a baseball bat in count 1 and a shod foot in count 2) and that defendant had willfully or maliciously vandalized Paula’s vehicle (count 3). .A jury trial was held in May 2006, at which the witnesses for the prosecution and the witnesses for the defense *758 presented drastically different versions of what had transpired during the altercation.
According to Paula, as he pulled his car over to the curb about a block away from Perez’s house to let her out, a red car stopped in front of him. Paula testified that, while he was still sitting in the driver’s seat of his car, defendant emerged from the red car and, without speaking a word, punched him, then retrieved a red baseball bat from the red car and started hitting Paula’s car with the bat, breaking several windows. Paula “threw [himjself through the side window” of his car, and then defendant began hitting him on his head, back, and knee with the bat. Paula specifically denied ever having a knife in his possession during the confrontation. Paula testified that the assault lasted seven or ten minutes.
Perez’s testimony about the incident paralleled Paula’s. She recalled that, as Paula was dropping her off, a car full of her cousins and a family friend pulled up to Paula’s car. Perez testified that defendant immediately got out of his car, punched Paula in the face, then started smashing Paula’s car windows with a bat. Perez had already exited the vehicle before defendant began smashing the windows of Paula’s Honda. Perez also testified that Paula jumped out of the open front passenger window of his car, that defendant hit Paula more than eight times with the bat, and that the attack lasted more than five minutes. She also denied that Paula brandished a knife during the incident. In addition, Perez admitted that her family was angry about her relationship with Paula and that her mother may have been worried about her when she had not returned home the previous evening because she had not called her mother that night.
Lauriz Morillo, .a New York resident, testified as a defense witness that he had been in Central Falls on September 5 to help his aunt — Perez’s mother — move to New York. Morillo testified that he, his brother Roy, and his cousin had been on their way to a barbershop when he saw Paula and Perez in a car near his aunt’s house. Morillo stated that he had been worried about Perez because he knew that she had not returned home to sleep the night before; he added that he was not happy that Perez and Paula were dating. According to Morillo, when defendant pulled over near Paula’s car, Morillo asked Perez if she was all right and Paula told him to mind his own business. Morillo testified that, as he started to walk Perez home, Paula was arguing with him, his brother, and defendant, and that Paula pulled out a knife. Morillo also testified that his brother retrieved a baseball bat from their car. According to Morillo, Paula “was attacking [his brother] with the knife like he was going to stab him”; Paula also swung the knife at defendant, who “put his hand up and [backed] away from [Paula].”
Morillo further testified that his brother dropped the bat and backed away; then defendant grabbed it off the ground and moved it around in a sweeping motion. Morillo demonstrated for the jury how Paula had been jabbing with the knife while defendant had swept the bat back and forth. Significantly, Morillo testified that he observed the bat and knife collide. Morillo stated that he then watched Paula move backwards, trip over the curb, drop the knife, and hit his head on the concrete. (Conversely, Paula had denied falling over a sidewalk curb or hitting his head on the concrete.) According to Morillo, he then kicked the knife away from where Paula had fallen while defendant dropped the bat *759 and left the area.[5] Morillo testified that Paula stood up and “put his fist on [him],” and that he defended himself by striking Paula “in the face a couple of times” and “in the stomach.” Morillo further testified that defendant’s “sweeping” motion with the bat broke the windows on Paula’s car. According to Morillo, defendant did not strike Paula with the bat at any time.
The jury also heard testimony from one eyewitness who, while in his apartment on Pine Street at noon on September 5, 2005, observed three men attacking a woman and a man with a baseball bat. This eyewitness testified that he asked his wife to call the police and that he then went outside to stop the attack. The eyewitness stated that the only weapon he saw was the bat and that he had observed the bat complete “two blows,” one to a person’s shoulder and one to a ribcage.
On the fifth day of trial, defendant did not appear and his attorney was unable to locate him. Before the trial proceeded to closing arguments, the trial justice considered the state’s motion to preclude defendant from arguing self-defense during his closing argument — a motion that ultimately evolved into arguments regarding a self-defense jury instruction. The trial justice ruled that she would not instruct the jury on self-defense and that defendant would not be allowed to mention self-defense in his closing argument. After deliberations, the jury found defendant guilty of felony assault with a bat and vandalism, but acquitted defendant of felony assault with a shod foot. Counsel for defendant timely filed a motion for new trial, which was heard and denied nearly seven ¡years later on March 5, 2013, after defendant had been arrested in Massachusetts and extradited to Rhode Island. On April 30, 2013, the trial justice sentenced defendant to a ten-year term of incarceration, with three years to serve and seven years suspended, with probation, for the felony assault conviction, and a one-year suspended term of incarceration on the conviction for vandalism, to run concurrently with the assault sentence.
In his appeal from the judgment of conviction, defendant argues that the trial justice erred when she granted the state’s motion to preclude defendant from discussing self-defense in his closing argument and by refusing to instruct the jury on the law of self-defense. This case initially came before us pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After oral argument we concluded that this Court would benefit from additional briefing and argument, and we reassigned this case to the full argument calendar.
II
Standard of Revievy
“This Court conducts a de novo review of a trial justice’s refusal to instruct the jury on self-defense.” State v. Pineda, 13 A.3d 623, 631 (R.I.2011). “If the trial justice ‘concludes that the requested instruction is not applicable, the effect of the defendant’s exception to such ruling is to require this [C]ourt to independently review the evidence and determine whether the trial justice’s concept [on self-defehse] was correct.’ ” Id. (quoting State v. Butler, 107 R.I. 489, 491, 268 A.2d 433, 434 (1970)). “In so doing, we examine the record in a *760 light most favorable to the defendant.” Id. “[W]e will affirm if the instructions adequately cover[ed] the law and neither reduce[d] nor shift[ed] the state’s burden of proof.” State v. Martin, 68 A.3d 467, 473 (R.I.2013) (quoting State v. Lopez, 45 A.3d 1, 22 (R.I.2012)).
Ill
Discussion
A
Waiver
Before we reach the merits of defendant’s claims of error by the trial justice, we must address the state’s contention that defendant has failed to adequately preserve the self-defense jury-instruction issue for review by this Court. The state’s argument that defendant has waived appellate review of this' issue is two-fold; first, the state argues that defendant' waived the issue by not objecting to the omission of the self-defense instruction at the end of the actual jury charge, especially because, at the conclusion of the charge, the trial justice specifically inquired whether either party had exceptions to the charge as given and defendant’s counsel replied in the negative. Second, the state asserts that, prior to the charge, defendant’s argument that a self-defense instruction was warranted did not specify that there was sufficient evidence of assault as opposed to battery to require the self-defense instruction. According to the state, the trial justice therefore did not have the opportunity to consider whether there was sufficient evidence of assault to warrant the self-defense instruction, and the state contends that, if defendant thought that the trial justice had erred, then defendant was obligated to make this specific objection after the conclusion of the jury instructions.
Rule 30 of the Superior Court Rules of Criminal Procedure requires that:
“At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the request. At the same time copies of such request shall be furnished to adverse parties. If a defendant relies upon an affirmative defense, or justification, or matter in mitigation and wishes the court to instruct the jury with respect to such, he or she shall so advise the court in writing no later than at the close of the evidence. No party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party’s objection. Objections shall be made out of the presence of the jury.”
“The purpose of the rule is to ensure that the trial justice is alerted to any deficiencies in the charge while there is still an opportunity for cure.” State v. Davis, 131 A,3d 679, 689 (R.I.2016) (quoting State v. Hanes, 783 A.2d 920, 924 (R.I.2001)). “In the numerous cases where this Court has declined to address a particular issue on appeal, the reasoning is frequently directed at trial counsel’s failure to alert the trial justice to the particular objection at any point in the trial.” Id. (emphasis added). We are also mindful that another ground for waiver of an issue on appeal is often based on our well-settled requirement that objections must be sufficiently specific “as to call the trial justice’s attention to the basis for said objection.” State v. Brown, 9 A.3d 1240, 1245 (R.I.2010) (quoting State v. Warren, 624 A.2d 841, 842 (R.I.1993)). We have recently held that, when a defendant objected on the record to a trial *761 justice’s denial of a request for a specific instruction, review of the denial on appeal was preserved even though the defendant had not renewed the objection after the jury charge. Davis, 131 A.3d at 691. In doing so, we recognized that the substance of the discussions on the record regarding a particular instruction was more important than the precise form or timing of the objection. Id.
In the case presently before us, there is no doubt that defendant’s trial strategy involved convincing the jury that defendant’s actions on September 5, 2005, were justifiable because he had acted in self-defense. The defendant’s opening statement included specific assertions that defendant had acted in self-defense when he wielded the baseball bat. The trial justice acknowledged at least twice that self-defense was an issue defendant had raised in his opening statement. In addition, during several bench conferences or sidebars throughout the trial — and prior to the state’s request to bar any mention of self-defense during closing arguments — the trial justice commented sua sponte that the evidence on the record at each point in time was not sufficient to warrant a self-defense instruction.[6]-
On the fifth day of trial, when defendant failed to appear and the parties and the trial justice agreed that the trial would continue, the state moved to preclude defendant from arguing self-defense in his closing argument. After the trial justice heard argument about whether there was sufficient evidence to support a self-defense theory, she stated that she would “exercise [her] discretion” and that while
“the trial justice is obligated to give instriietions as to those rules of law that of necessity must be applied to the issue raised at trial to secure a fair trial, that does not require speculation and conjecture and creativity beyond the evidence. Where there is no evidence to support the defense offered by an accused which raises an issue of fact favorable to him, the [c]ourt should not instruct. That would merely le[a]d to confusion.
“I grant the motion. There will be no instruction on self-defense, defense of others. There will be no mention in final, argument of that defense. This case is a case as it seems that if they believe your witness, then the defendant did not in any way commit a battery on the complaining witness and the defendant did not in any way cause malicious damage of his property.- If they merely think that your witness creates a reasonable. doubt as to whether it occurred, there is.amacquittal.” .
The trial justice explicitly noted defendant’s exception to her ruling. At the conclusion of the jury charge, the trial *762 justice summoned the attorneys to the bench and asked if they had any exceptions to the charge. The defendant’s counsel replied “[n]o exception.”
In our opinion, defendant was not required to' restate his exception at this point in time because the trial justice had already explicitly noted his exception after she initially made her ruling. In so concluding, we agree with defendant that “Rule 30 does not mechanically bar appellate review where defense counsel failed to object after the instructions were given, so long as defense counsel objected, on the record, in time for the trial court to address the complained-of error.” Given the numerous instances on the record throughout the trial in which the theory of self-defense was discussed, the trial justice was clearly on notice that defendant sought to incorporate self-defense into the jury charge and that defendant objected to the trial justice’s refusal to so instruct. The purpose of Rule 30 was, therefore, fulfilled. See Davis, 131 A.3d at 689, 691. We also conclude that defendant properly preserved this issue for our review because, when the trial justice was considering the state’s motion to preclude this affirmative defense, defendant specifically argued evidence that existed on the record that he had both assaulted and battered Paula in self-defense.
B
Self-Defense Instruction
The defendant argues that he was entitled to a self-defense instruction because there was sufficient evidence introduced during the trial to support his self-defense theory. The state contends, however, that there was no evidence to support a self-defense hypothesis because Morillo denied seeing defendant strike Paula’s body with the bat and maintained, rather, that Paula received head injuries when he tripped over the curb.
“It is axiomatic that self-defense excuses or justifies an otherwise criminal assault and battery because the actor fears for [his or] her own safety and is entitled to use appropriate force to prevent, avoid, or combat an advancing attacker.” Pineda, 13 A.3d at 632. “By definition, [therefore,] the self-defense hypothesis presumes that the defendant actually committed the charged assault * * Id. “[U]nder the law relating to self-defense, one may defend oneself whenever one reasonably believes that he or she is in imminent danger of bodily harm at the hands of another.” State v. Van Dongen, 132 A.3d 1070, 1079 (R.I.2016) (quoting State v. Urena, 899 A.2d 1281, 1288 (R.I. 2006)). “Although ‘[o]ne need not wait for the other to strike the first blow[,] * * * such a person must use only such force as is reasonably necessary for his [or her] own protection.’ ” Id. (quoting Urena, 899 A.2d at 1288). “The permissible degree of force used in defense of oneself varies with the particular set of circumstances in which he or she acts, but in no set of circumstances may one apply more than that degree of force necessary to prevent bodily injury.” Id. (quoting State v. Linde, 876 A.2d 1115, 1129 (R.I.2005)). “In addition, a defendant who was the initial aggressor of the combative confrontation is generally not entitled to rely on self-defense.” Id. (quoting Urena, 899 A.2d at 1288).
A self-defense jury instruction is warranted when “the record as a whole * * * contain[s] at least a scintilla of evidence supporting the defendant’s theory.” Martin, 68 A.3d at 474 (quoting Pineda, 13 A.3d at 634). “However slight and tenuous the evidence may be on which the self-defense hypothesis is advanced, it is nevertheless there for the- jury’s consideration, *763 and the fair[-]trial concept requires that the jury consider it under an appropriate instruction.” Butler, 107 R.I. at 496, 268 A.2d at 436-37. “The fact that a trial justice does not believe the accused’s defense does not alter his [or her] obligation to submit such defense to the jury under proper instructions.” Id. at 496-96, 268 A.2d at 436. In determining whether a scintilla of evidence exists on the record to support a defendant’s self-defense theory, we have previously acknowledged that it is appropriate to “refer to other evidence not specifically elicited from the defendant.” Pineda, 13 A.3d at 631 (citing and quoting Murphy-Bey v. United States, 982 A.2d 682, 690 (D.C.2009) (“[E]vidence [related to a theory of defense] may come from either the prosecution or the defense, or a combination of the two.”)).
In the case at bar, the trial justice seemingly focused on the lack of evidence that defendant actually struck Paula. Morillo’s testimony was that defendant employed a bat in a sweeping motion to keep a knife-wielding Paula at bay, and that Paula tripped over the curb, hitting his head on the concrete, and then was punched in the face and stomach by Morillo. Morillo never saw the bat come into contact with any part of Paula’s body, although he said he did observe the bat and knife collide. The trial justice opined that there was no evidence of self-defense. The jury would believe either the prosecution’s version, in which Paula never had a knife, and thus convict, or the jury would credit defendant’s version, in which Paula’s injuries resulted not from being struck with the bat but rather by his tripping and hitting his head on the concrete, in which case it would acquit.
As a practical matter, there is much sagacity in 'the trial justice’s analysis. The two versions are,so diametrically opposed that it would be highly unlikely that a jury would believe Paula’s testimony that defendant brutally beat him with a bat, while at the. same time disbelieving Paula’s testimony that he was unarmed. The analysis overlooks the fact, however, that Morillo’s testimony that the bat came in contact with the knife may be enough’-to establish a battery.
It is well settled that “Mattery refers to an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault.” State v. McLaughlin, 621 A.2d 170, 177 (R.I.1993) (quoting State v. Messa, 694 A.2d 882, 884 (R.I.1991)). We have previously held that an “offensive contact with an object attached to or identified with [a person’s] body was sufficient to constitute a battery.” Picard v. Barry Pontiac-Buick, Inc., 654 A.2d 690, 694 (R.I.1995) (where the defendant had intended to strike the camera in the plaintiffs hand and not the plaintiffs body). In addition, “[a]side from the obvious higher standard of proof required to establish criminal battery, the law recognizes no distinction between criminal and civil battery.” State v. Albanese, 970 A.2d 1216, 1221 (R.I.2009) (quoting Fenwick v. Oberman, 847 A.2d 852, 855 (R.I.2004)). Here, Morillo testified that, when defendant was sweeping the bat back and forth, it collided with the knife held by Paula. In our opinion, this testimony provided the required scintilla of evidence for the contact element of battery. We conclude, therefore, that defendant presented sufficient evidence, albeit slight and tenuous, to warrant a self-defense jury instruction.
The evidence in this case alleging self-defense suggests a similar degree of “slight and tenuous” as the case wherein we set this “slight and tenuous” threshold. See Butler, 107 R.I. at 496, 268 A.2d at *764 436. In Butler, 107 R.I. at 490-92, 268 A.2d at- 434-35, the-defendant was convicted of second-degree murder after her altercation with a man she had met in a bar ended with fatal injuries to the man. The trial justice refused the defendant’s request to instruct the jury on self-defense. Id. at 491, 268 A.2d at 434. The testimony at trial included testimony from an eyewitness, the defendant, and the pathologist who had performed the autopsy. Id. at 491-95, 268 A.2d at 434-36. The eyewitness testified that she had seen a man and a woman walk into a vacant lot, heard what sounded like someone hitting someone else with a rock, then saw the woman leave the area from which the sounds came and depart in a waiting car. Id. at 491-92, 268 A.2d at 434. This Court held that the trial justice had erred by refusing to provide a self-defense instruction to the jury because the defendant had .testified that the decedent sustained his fatal head injuries, after, she fended off his unprovoked attack by pushing him to the ground, and the pathologist had testified that the decedent’s head injuries were consistent with either blows, or falls. Id. at 493-95, 496-97, 268 A.2d at 435, 436-37, As we commented in Pineda, 13 A.3d at 633 n. 9:
“when the defendant in Butler asserted that she responded to the victim allegedly grabbing her throat with a panicked push that .caused the victim to fall and fatally injure his head, she offered an alternate theory and justification why her victim was killed by her actions and why she should not be criminally responsible for second-degree murder.”
A similar alternate theory and justification for Paula’s injuries exists in the case at bar: Morillo’s testimony that defendant struck a knife in Paula’s hand with a bat, causing Paula to stumble backwards over a curb and hit his head, coupled with Moril-lo’s testimony that he punched Paula after defendant had left the scene — if believed by the jury as the true version of events on September 5, 2005 — provides a justification for Paula’s injuries and why defendant should not be held criminally responsible for them. Because it is well settled that “a trial justice is obligated to give a proposed instruction on self-defense ‘regardless of how slight and tenuous the evidence may be on which the self-defense hypothesis is advanced,’ ” Martin, 68 A.3d at 474 (quoting Linde, 876 A.2d at 1130), we conclude that the lack of a self-defense instruction as part of the jury charge entitles defendant to a new trial.
We turn now, briefly, to the defendant’s argument that he was entitled to a self-defense instruction on the charge of vandalism because the record reflects the required scintilla of evidence to support this affirmative defense. This Court has not recognized self-defense as justifying behavior that leads to a conviction for vandalism pursuant to § 11-44-1, and we decline the invitation to do so now. As the trial justice pointed out, the affirmative defense of accident would have been the appropriate justification defense for this charge against the defendant. Our holding with respect to the felony assault conviction does not affect the defendant’s conviction for vandalism.[7]
*765 IV
Conclusion
For the reasons set forth in this opinion, we vacate the defendant’s conviction for felony assault with a dangerous weapon. The record in this case may be remanded to the Superior Court for further proceedings.

. The trial transcripts also spell Lauriz's name as “Lauris.” It is not clear which spelling is correct.

. Throughout the record of this case, the complaining witness is referred to as either An-strom Paula or Anstrom Paula Diaz. It is unclear which format is correct, but because this witness introduced.himself to the court as Anstrom Paula when he testified, we will refer to him as Paula.

. General Laws 1956 § 11 — 5—2(a) states that: "Every person who shall, make an assault or battery, or both, with a dangerous weapon, or with acid or other dangerous substance, or by fire, .or an assault or.battery which results in serious bodily injury, shall be punished by imprisonment for not more than twenty (20) years."

.'General Laws 1956 § ll-44-l(a) states, in pertinent part, that:
"Every person who shall willfully and maliciously or mischievously injure or destroy or write upon, paint, or otherwise deface the property of another, or obstruct the use of the property' of another, or obstruct another in the prosecution of his or her lawful business or pursuits, in any manner, the punishment of which is not specifically provided for by statute, shall be guilty.of a misdemeanor’and shall be fined not exceeding one thousand dollars ($1,000) and/or be imprisoned not exceeding one year, and shall be liable to make restitution for the injury or damage caused."

. Officer Anthony Paone with the Central Falls Police Department testified that, when he responded to the scene on September 5, 2005, for a "[flight call in progress,” he found a kitchen knife in the fenced yard adjacent to Paula's car and he bagged the knife as evidence. Officer Paone also testified that, when he first saw the knife, it was located approximately sixteen feet from Paula's car. The knife was admitted as a full exhibit at trial.

. During the second day of witness testimony, the trial justice asked defendant to provide her with a chronology of events, in the light most favorable to defendant, that led defendant to defend himself as well as the details of 'why defendant contended that "self-defense [wa]s an appropriate defense.” Later, after Morillo had testified on direct examination on the third day of witness testimony, the trial justice stated, sua sponte. that she would have been "hard pressed to instruct on self-defense” if defendant had nothing more than Morillo’s testimony’ because that testimony did not include that defendant struck Paula at all, just that Paula tripped, fell, hit his head and that the damage to the car windows was an accident. Partway through Morillo’s cross-éxaqiination, during a bench conference on the record, the trial justice stated, ”[i]t is not self-defense. * * Stop talking self-defense. It’s a legal defense and there is no evidence right now to suggest it.” At the conclusion of Morillo's cross-examination, she called'for a sidebar, in which she provided the attorneys with a sua sponte "heads up” that, before the redirect examination began, there was no testimony that Morillo saw contact between the bat and Paula's hand "and unless’ [Morillo] actually saw it, that’s not going to súpport a self-defense argument.”

. The defendant also argues that the trial justice erred as a matter of law by focusing only on tire battery part of § 11-5-2 — the felony assault statute — when there was sufficient evidence on the record that defendant committed assault against Paula, and that the trial justice's proscription of a self-defense argument during the defendant’s closing argument violated his right to ■ effective assistance of counsel. Because we are holding that there was sufficient evidence to warrant a self-defense instruction with respect to the offense of battery within the felony assault statute, we need not address the defendant’s remaining arguments on appeal.