**Supreme Court**

No. 2013-241-C.A.

(P2/05-3230A)

State                            :

  v.                             :

Juan Soler.                      :


NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                     :

v.                       :

Juan Soler.              :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The defendant, Juan Soler, appeals from his convictions for assault with a dangerous weapon and vandalism. He argues that the trial justice erred by refusing to include a self-defense instruction in the jury charge. We agree; and, for the reasons set forth herein, we vacate the defendant's conviction for felony assault.

**I**

**Facts and Procedural History**

On September 5, 2005, an altercation occurred on Pine Street in Central Falls between defendant, his cousins Roy and Lauriz[1] Morillo, and the complaining witness, Anstrom Paula.[2] Everyone involved in the incident knew each other well; defendant and his cousins had met Paula years earlier when Paula started dating one of their other cousins, Felicia Garcia. Paula and Garcia had a child together, became engaged, and lived together for a period of time before the relationship ended. By September 5, 2005, Paula had been dating Garcia's sister, Amanda

---

[1] The trial transcripts also spell Lauriz's name as "Lauris." It is not clear which spelling is correct.

[2] Throughout the record of this case, the complaining witness is referred to as either Anstrom Paula or Anstrom Paula Diaz. It is unclear which format is correct, but because this witness introduced himself to the court as Anstrom Paula when he testified, we will refer to him as Paula.

Perez; this relationship had been kept secret from her family, however, until Perez's mother and sister found out about it the day before the altercation occurred. On the night of September 4, Perez and Paula slept at a friend's house. Paula drove Perez home around noon on September 5, dropping her off a short distance from her home. Before Paula had pulled away from the curb, defendant, the Morillo brothers, and a friend drove up beside Paula's automobile, and the altercation immediately began. Several minutes later, Paula was bleeding from his head and had sustained injuries to his neck, back, right elbow, and right leg. In addition, several windows of Paula's Honda had been broken.

On October 27, 2005, defendant was charged by information with two counts of felony assault pursuant to G.L. 1956 § 11-5-2[3] and one count of vandalism pursuant to G.L. 1956 § 11-44-1.[4] The criminal information alleged that defendant had assaulted Paula with two dangerous weapons (a baseball bat in count 1 and a shod foot in count 2) and that defendant had willfully or maliciously vandalized Paula's vehicle (count 3). A jury trial was held in May 2006, at which the witnesses for the prosecution and the witnesses for the defense presented drastically different versions of what had transpired during the altercation.

---

[3] General Laws 1956 § 11-5-2(a) states that: "Every person who shall make an assault or battery, or both, with a dangerous weapon, or with acid or other dangerous substance, or by fire, or an assault or battery which results in serious bodily injury, shall be punished by imprisonment for not more than twenty (20) years."

[4] General Laws 1956 § 11-44-1(a) states, in pertinent part, that:

> "Every person who shall willfully and maliciously or mischievously injure or destroy or write upon, paint, or otherwise deface the property of another, or obstruct the use of the property of another, or obstruct another in the prosecution of his or her lawful business or pursuits, in any manner, the punishment of which is not specifically provided for by statute, shall be guilty of a misdemeanor and shall be fined not exceeding one thousand dollars ($1,000) and/or be imprisoned not exceeding one year, and shall be liable to make restitution for the injury or damage caused."

According to Paula, as he pulled his car over to the curb about a block away from Perez's house to let her out, a red car stopped in front of him. Paula testified that, while he was still sitting in the driver's seat of his car, defendant emerged from the red car and, without speaking a word, punched him, then retrieved a red baseball bat from the red car and started hitting Paula's car with the bat, breaking several windows. Paula "threw [him]self through the side window" of his car, and then defendant began hitting him on his head, back, and knee with the bat. Paula specifically denied ever having a knife in his possession during the confrontation. Paula testified that the assault lasted seven or ten minutes.

Perez's testimony about the incident paralleled Paula's. She recalled that, as Paula was dropping her off, a car full of her cousins and a family friend pulled up to Paula's car. Perez testified that defendant immediately got out of his car, punched Paula in the face, then started smashing Paula's car windows with a bat. Perez had already exited the vehicle before defendant began smashing the windows of Paula's Honda. Perez also testified that Paula jumped out of the open front passenger window of his car, that defendant hit Paula more than eight times with the bat, and that the attack lasted more than five minutes. She also denied that Paula brandished a knife during the incident. In addition, Perez admitted that her family was angry about her relationship with Paula and that her mother may have been worried about her when she had not returned home the previous evening because she had not called her mother that night.

Lauriz Morillo, a New York resident, testified as a defense witness that he had been in Central Falls on September 5 to help his aunt—Perez's mother—move to New York. Morillo testified that he, his brother Roy, and his cousin had been on their way to a barbershop when he saw Paula and Perez in a car near his aunt's house. Morillo stated that he had been worried about Perez because he knew that she had not returned home to sleep the night before; he added

that he was not happy that Perez and Paula were dating. According to Morillo, when defendant pulled over near Paula's car, Morillo asked Perez if she was all right and Paula told him to mind his own business. Morillo testified that, as he started to walk Perez home, Paula was arguing with him, his brother, and defendant, and that Paula pulled out a knife. Morillo also testified that his brother retrieved a baseball bat from their car. According to Morillo, Paula "was attacking [his brother] with the knife like he was going to stab him"; Paula also swung the knife at defendant, who "put his hand up and [backed] away from [Paula]."

Morillo further testified that his brother dropped the bat and backed away; then defendant grabbed it off the ground and moved it around in a sweeping motion. Morillo demonstrated for the jury how Paula had been jabbing with the knife while defendant had swept the bat back and forth. Significantly, Morillo testified that he observed the bat and knife collide. Morillo stated that he then watched Paula move backwards, trip over the curb, drop the knife, and hit his head on the concrete. (Conversely, Paula had denied falling over a sidewalk curb or hitting his head on the concrete.) According to Morillo, he then kicked the knife away from where Paula had fallen while defendant dropped the bat and left the area.[5] Morillo testified that Paula stood up and "put his fist on [him]," and that he defended himself by striking Paula "in the face a couple of times" and "in the stomach." Morillo further testified that defendant's "sweeping" motion with the bat broke the windows on Paula's car. According to Morillo, defendant did not strike Paula with the bat at any time.

---

[5] Officer Anthony Paone with the Central Falls Police Department testified that, when he responded to the scene on September 5, 2005, for a "[f]ight call in progress," he found a kitchen knife in the fenced yard adjacent to Paula's car and he bagged the knife as evidence. Officer Paone also testified that, when he first saw the knife, it was located approximately sixteen feet from Paula's car. The knife was admitted as a full exhibit at trial.

The jury also heard testimony from one eyewitness who, while in his apartment on Pine Street at noon on September 5, 2005, observed three men attacking a woman and a man with a baseball bat. This eyewitness testified that he asked his wife to call the police and that he then went outside to stop the attack. The eyewitness stated that the only weapon he saw was the bat and that he had observed the bat complete "two blows," one to a person's shoulder and one to a ribcage.

On the fifth day of trial, defendant did not appear and his attorney was unable to locate him. Before the trial proceeded to closing arguments, the trial justice considered the state's motion to preclude defendant from arguing self-defense during his closing argument—a motion that ultimately evolved into arguments regarding a self-defense jury instruction. The trial justice ruled that she would not instruct the jury on self-defense and that defendant would not be allowed to mention self-defense in his closing argument. After deliberations, the jury found defendant guilty of felony assault with a bat and vandalism, but acquitted defendant of felony assault with a shod foot. Counsel for defendant timely filed a motion for new trial, which was heard and denied nearly seven years later on March 5, 2013, after defendant had been arrested in Massachusetts and extradited to Rhode Island. On April 30, 2013, the trial justice sentenced defendant to a ten-year term of incarceration, with three years to serve and seven years suspended, with probation, for the felony assault conviction, and a one-year suspended term of incarceration on the conviction for vandalism, to run concurrently with the assault sentence.

In his appeal from the judgment of conviction, defendant argues that the trial justice erred when she granted the state's motion to preclude defendant from discussing self-defense in his closing argument and by refusing to instruct the jury on the law of self-defense. This case initially came before us pursuant to an order directing the parties to show cause why the issues

raised in this appeal should not be summarily decided. After oral argument we concluded that this Court would benefit from additional briefing and argument, and we reassigned this case to the full argument calendar.

## II

## Standard of Review

"This Court conducts a <u>de novo</u> review of a trial justice's refusal to instruct the jury on self-defense." <u>State v. Pineda</u>, 13 A.3d 623, 631 (R.I. 2011). "If the trial justice 'concludes that the requested instruction is not applicable, the effect of the defendant's exception to such ruling is to require this [C]ourt to independently review the evidence and determine whether the trial justice's concept [on self-defense] was correct.'" <u>Id.</u> (quoting <u>State v. Butler</u>, 107 R.I. 489, 491, 268 A.2d 433, 434 (1970)). "In so doing, we examine the record in a light most favorable to the defendant." <u>Id.</u> "[W]e will affirm if the instructions adequately cover[ed] the law and neither reduce[d] nor shift[ed] the state's burden of proof." <u>State v. Martin</u>, 68 A.3d 467, 473 (R.I. 2013) (quoting <u>State v. Lopez</u>, 45 A.3d 1, 22 (R.I. 2012)).

## III

## Discussion

## A

## Waiver

Before we reach the merits of defendant's claims of error by the trial justice, we must address the state's contention that defendant has failed to adequately preserve the self-defense jury-instruction issue for review by this Court. The state's argument that defendant has waived appellate review of this issue is two-fold; first, the state argues that defendant waived the issue by not objecting to the omission of the self-defense instruction at the end of the actual jury

charge, especially because, at the conclusion of the charge, the trial justice specifically inquired whether either party had exceptions to the charge as given and defendant's counsel replied in the negative. Second, the state asserts that, prior to the charge, defendant's argument that a self-defense instruction was warranted did not specify that there was sufficient evidence of assault as opposed to battery to require the self-defense instruction. According to the state, the trial justice therefore did not have the opportunity to consider whether there was sufficient evidence of assault to warrant the self-defense instruction, and the state contends that, if defendant thought that the trial justice had erred, then defendant was obligated to make this specific objection after the conclusion of the jury instructions.

Rule 30 of the Superior Court Rules of Criminal Procedure requires that:

> "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the request. At the same time copies of such request shall be furnished to adverse parties. If a defendant relies upon an affirmative defense, or justification, or matter in mitigation and wishes the court to instruct the jury with respect to such, he or she shall so advise the court in writing no later than at the close of the evidence. No party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection. Objections shall be made out of the presence of the jury."

"The purpose of the rule is to ensure that the trial justice is alerted to any deficiencies in the charge while there is still an opportunity for cure." State v. Davis, 131 A.3d 679, 689 (R.I. 2016) (quoting State v. Hanes, 783 A.2d 920, 924 (R.I. 2001)). "In the numerous cases where this Court has declined to address a particular issue on appeal, the reasoning is frequently directed at trial counsel's failure to alert the trial justice to the particular objection at any point in the trial." Id. (emphasis added). We are also mindful that another ground for waiver of an issue on appeal

is often based on our well-settled requirement that objections must be sufficiently specific "as to call the trial justice's attention to the basis for said objection." State v. Brown, 9 A.3d 1240, 1245 (R.I. 2010) (quoting State v. Warren, 624 A.2d 841, 842 (R.I. 1993)). We have recently held that, when a defendant objected on the record to a trial justice's denial of a request for a specific instruction, review of the denial on appeal was preserved even though the defendant had not renewed the objection after the jury charge. Davis, 131 A.3d at 691. In doing so, we recognized that the substance of the discussions on the record regarding a particular instruction was more important than the precise form or timing of the objection. Id.

In the case presently before us, there is no doubt that defendant's trial strategy involved convincing the jury that defendant's actions on September 5, 2005, were justifiable because he had acted in self-defense. The defendant's opening statement included specific assertions that defendant had acted in self-defense when he wielded the baseball bat. The trial justice acknowledged at least twice that self-defense was an issue defendant had raised in his opening statement. In addition, during several bench conferences or sidebars throughout the trial—and prior to the state's request to bar any mention of self-defense during closing arguments—the trial justice commented sua sponte that the evidence on the record at each point in time was not sufficient to warrant a self-defense instruction.[6]

---

[6] During the second day of witness testimony, the trial justice asked defendant to provide her with a chronology of events, in the light most favorable to defendant, that led defendant to defend himself as well as the details of why defendant contended that "self-defense [wa]s an appropriate defense." Later, after Morillo had testified on direct examination on the third day of witness testimony, the trial justice stated, sua sponte, that she would have been "hard pressed to instruct on self-defense" if defendant had nothing more than Morillo's testimony because that testimony did not include that defendant struck Paula at all, just that Paula tripped, fell, hit his head and that the damage to the car windows was an accident. Partway through Morillo's cross-examination, during a bench conference on the record, the trial justice stated, "[i]t is not self-defense. * * * Stop talking self-defense. It's a legal defense and there is no evidence right now to suggest it." At the conclusion of Morillo's cross-examination, she called for a sidebar, in

On the fifth day of trial, when defendant failed to appear and the parties and the trial justice agreed that the trial would continue, the state moved to preclude defendant from arguing self-defense in his closing argument. After the trial justice heard argument about whether there was sufficient evidence to support a self-defense theory, she stated that she would "exercise [her] discretion" and that while

> "the trial justice is obligated to give instructions as to those rules of law that of necessity must be applied to the issue raised at trial to secure a fair trial, that does not require speculation and conjecture and creativity beyond the evidence. Where there is no evidence to support the defense offered by an accused which raises an issue of fact favorable to him, the [c]ourt should not instruct. That would merely le[a]d to confusion.
> "I grant the motion. There will be no instruction on self-defense, defense of others. There will be no mention in final argument of that defense. This case is a case as it seems that if they believe your witness, then the defendant did not in any way commit a battery on the complaining witness and the defendant did not in any way cause malicious damage of his property. If they merely think that your witness creates a reasonable doubt as to whether it occurred, there is an acquittal."

The trial justice explicitly noted defendant's exception to her ruling. At the conclusion of the jury charge, the trial justice summoned the attorneys to the bench and asked if they had any exceptions to the charge. The defendant's counsel replied "[n]o exception."

In our opinion, defendant was not required to restate his exception at this point in time because the trial justice had already explicitly noted his exception after she initially made her ruling. In so concluding, we agree with defendant that "Rule 30 does not mechanically bar appellate review where defense counsel failed to object after the instructions were given, so long as defense counsel objected, on the record, in time for the trial court to address the complained-

which she provided the attorneys with a <u>sua</u> <u>sponte</u> "heads up" that, before the redirect examination began, there was no testimony that Morillo saw contact between the bat and Paula's hand "and unless [Morillo] actually saw it, that's not going to support a self-defense argument."

of error." Given the numerous instances on the record throughout the trial in which the theory of self-defense was discussed, the trial justice was clearly on notice that defendant sought to incorporate self-defense into the jury charge and that defendant objected to the trial justice's refusal to so instruct. The purpose of Rule 30 was, therefore, fulfilled. See Davis, 131 A.3d at 689, 691. We also conclude that defendant properly preserved this issue for our review because, when the trial justice was considering the state's motion to preclude this affirmative defense, defendant specifically argued evidence that existed on the record that he had both assaulted and battered Paula in self-defense.

**B**

**Self-Defense Instruction**

The defendant argues that he was entitled to a self-defense instruction because there was sufficient evidence introduced during the trial to support his self-defense theory. The state contends, however, that there was no evidence to support a self-defense hypothesis because Morillo denied seeing defendant strike Paula's body with the bat and maintained, rather, that Paula received head injuries when he tripped over the curb.

"It is axiomatic that self-defense excuses or justifies an otherwise criminal assault and battery because the actor fears for [his or] her own safety and is entitled to use appropriate force to prevent, avoid, or combat an advancing attacker." Pineda, 13 A.3d at 632. "By definition, [therefore,] the self-defense hypothesis presumes that the defendant actually committed the charged assault * * *." Id. "[U]nder the law relating to self-defense, one may defend oneself whenever one reasonably believes that he or she is in imminent danger of bodily harm at the hands of another." State v. Van Dongen, 132 A.3d 1070, 1079 (R.I. 2016) (quoting State v. Urena, 899 A.2d 1281, 1288 (R.I. 2006)). "Although '[o]ne need not wait for the other to strike

the first blow[,] * * * such a person must use only such force as is reasonably necessary for his [or her] own protection.'" Id. (quoting Urena, 899 A.2d at 1288). "The permissible degree of force used in defense of oneself varies with the particular set of circumstances in which he or she acts, but in no set of circumstances may one apply more than that degree of force necessary to prevent bodily injury." Id. (quoting State v. Linde, 876 A.2d 1115, 1129 (R.I. 2005)). "In addition, a defendant who was the initial aggressor of the combative confrontation is generally not entitled to rely on self-defense." Id. (quoting Urena, 899 A.2d at 1288).

A self-defense jury instruction is warranted when "the record as a whole * * * contain[s] at least a scintilla of evidence supporting the defendant's theory." Martin, 68 A.3d at 474 (quoting Pineda, 13 A.3d at 634). "However slight and tenuous the evidence may be on which the self-defense hypothesis is advanced, it is nevertheless there for the jury's consideration, and the fair[-]trial concept requires that the jury consider it under an appropriate instruction." Butler, 107 R.I. at 496, 268 A.2d at 436-37. "The fact that a trial justice does not believe the accused's defense does not alter his [or her] obligation to submit such defense to the jury under proper instructions." Id. at 495-96, 268 A.2d at 436. In determining whether a scintilla of evidence exists on the record to support a defendant's self-defense theory, we have previously acknowledged that it is appropriate to "refer to other evidence not specifically elicited from the defendant." Pineda, 13 A.3d at 631 (citing and quoting Murphy-Bey v. United States, 982 A.2d 682, 690 (D.C. 2009) ("[E]vidence [related to a theory of defense] may come from either the prosecution or the defense, or a combination of the two.")).

In the case at bar, the trial justice seemingly focused on the lack of evidence that defendant actually struck Paula. Morillo's testimony was that defendant employed a bat in a sweeping motion to keep a knife-wielding Paula at bay, and that Paula tripped over the curb,

hitting his head on the concrete, and then was punched in the face and stomach by Morillo. Morillo never saw the bat come into contact with any part of Paula's body, although he said he did observe the bat and knife collide. The trial justice opined that there was no evidence of self-defense. The jury would believe either the prosecution's version, in which Paula never had a knife, and thus convict, or the jury would credit defendant's version, in which Paula's injuries resulted not from being struck with the bat but rather by his tripping and hitting his head on the concrete, in which case it would acquit.

As a practical matter, there is much sagacity in the trial justice's analysis. The two versions are so diametrically opposed that it would be highly unlikely that a jury would believe Paula's testimony that defendant brutally beat him with a bat, while at the same time disbelieving Paula's testimony that he was unarmed. The analysis overlooks the fact, however, that Morillo's testimony that the bat came in contact with the knife may be enough to establish a battery.

It is well settled that "[b]attery refers to an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault." State v. McLaughlin, 621 A.2d 170, 177 (R.I. 1993) (quoting State v. Messa, 594 A.2d 882, 884 (R.I. 1991)). We have previously held that an "offensive contact with an object attached to or identified with [a person's] body was sufficient to constitute a battery." Picard v. Barry Pontiac-Buick, Inc., 654 A.2d 690, 694 (R.I. 1995) (where the defendant had intended to strike the camera in the plaintiff's hand and not the plaintiff's body). In addition, "[a]side from the obvious higher standard of proof required to establish criminal battery, the law recognizes no distinction between criminal and civil battery." State v. Albanese, 970 A.2d 1215, 1221 (R.I. 2009) (quoting Fenwick v. Oberman, 847 A.2d 852, 855 (R.I. 2004)). Here, Morillo testified that, when

defendant was sweeping the bat back and forth, it collided with the knife held by Paula. In our opinion, this testimony provided the required scintilla of evidence for the contact element of battery. We conclude, therefore, that defendant presented sufficient evidence, albeit slight and tenuous, to warrant a self-defense jury instruction.

The evidence in this case alleging self-defense suggests a similar degree of "slight and tenuous" as the case wherein we set this "slight and tenuous" threshold. See Butler, 107 R.I. at 496, 268 A.2d at 436. In Butler, 107 R.I. at 490-92, 268 A.2d at 434-35, the defendant was convicted of second-degree murder after her altercation with a man she had met in a bar ended with fatal injuries to the man. The trial justice refused the defendant's request to instruct the jury on self-defense. Id. at 491, 268 A.2d at 434. The testimony at trial included testimony from an eyewitness, the defendant, and the pathologist who had performed the autopsy. Id. at 491-95, 268 A.2d at 434-36. The eyewitness testified that she had seen a man and a woman walk into a vacant lot, heard what sounded like someone hitting someone else with a rock, then saw the woman leave the area from which the sounds came and depart in a waiting car. Id. at 491-92, 268 A.2d at 434. This Court held that the trial justice had erred by refusing to provide a self-defense instruction to the jury because the defendant had testified that the decedent sustained his fatal head injuries after she fended off his unprovoked attack by pushing him to the ground, and the pathologist had testified that the decedent's head injuries were consistent with either blows or falls. Id. at 493-95, 496-97, 268 A.2d at 435, 436-37. As we commented in Pineda, 13 A.3d at 633 n.9:

> "when the defendant in Butler asserted that she responded to the victim allegedly grabbing her throat with a panicked push that caused the victim to fall and fatally injure his head, she offered an alternate theory and justification why her victim was killed by her actions and why she should not be criminally responsible for second-degree murder."

- 13 -

A similar alternate theory and justification for Paula's injuries exists in the case at bar: Morillo's testimony that defendant struck a knife in Paula's hand with a bat, causing Paula to stumble backwards over a curb and hit his head, coupled with Morillo's testimony that he punched Paula after defendant had left the scene—if believed by the jury as the true version of events on September 5, 2005—provides a justification for Paula's injuries and why defendant should not be held criminally responsible for them. Because it is well settled that "a trial justice is obligated to give a proposed instruction on self-defense 'regardless of how slight and tenuous the evidence may be on which the self-defense hypothesis is advanced,'" Martin, 68 A.3d at 474 (quoting Linde, 876 A.2d at 1130), we conclude that the lack of a self-defense instruction as part of the jury charge entitles defendant to a new trial.

We turn now, briefly, to the defendant's argument that he was entitled to a self-defense instruction on the charge of vandalism because the record reflects the required scintilla of evidence to support this affirmative defense. This Court has not recognized self-defense as justifying behavior that leads to a conviction for vandalism pursuant to § 11-44-1, and we decline the invitation to do so now. As the trial justice pointed out, the affirmative defense of accident would have been the appropriate justification defense for this charge against the defendant. Our holding with respect to the felony assault conviction does not affect the defendant's conviction for vandalism.[7]

---

[7] The defendant also argues that the trial justice erred as a matter of law by focusing only on the battery part of § 11-5-2—the felony assault statute—when there was sufficient evidence on the record that defendant committed assault against Paula, and that the trial justice's proscription of a self-defense argument during the defendant's closing argument violated his right to effective assistance of counsel. Because we are holding that there was sufficient evidence to warrant a self-defense instruction with respect to the offense of battery within the felony assault statute, we need not address the defendant's remaining arguments on appeal.

# IV

## Conclusion

For the reasons set forth in this opinion, we vacate the defendant's conviction for felony assault with a dangerous weapon. The record in this case may be remanded to the Superior Court for further proceedings.

**Justice Goldberg, dissenting.** In my opinion, the defendant, Juan Soler, waived any argument concerning the trial justice's failure to give the jury a self-defense instruction when he went to sidebar after the trial justice instructed the jury and explicitly stated that he had "[n]o exception" to the charge. Therefore, I respectfully dissent.[1]

In my opinion, this case is distinguishable from our recent decision in State v. Davis, 131 A.3d 679 (R.I. 2016), on two significant grounds. First, Davis involved an in-court charging conference that occurred after a chambers conference and after the trial justice had provided the parties with written copies of his proposed jury instructions. See id. at 690. The defendant in Davis requested that the court instruct the jury to disregard what the prosecutor said during his opening statement about a witness who subsequently refused to testify at trial. Id. Further, defense counsel contended that, if the court refused to so instruct, then he should be allowed during his closing argument to the jury to refer to the fact that the witness did not testify.[2] Id. In this case, by contrast, the colloquy that preceded the trial justice's ruling that she would not give a self-defense instruction was precipitated by the state's motion to preclude defendant from

---

[1] I begin by noting that the case was tried in the Superior Court ten years ago. The defendant fled midtrial and was not apprehended until sometime in 2012. The defendant's motion for a new trial was denied in March 2013, and he was sentenced in April of that year. It has taken another three years for his case to come before this Court.

[2] This issue was not addressed by this Court.

arguing self-defense in his closing argument. Although the discussion morphed into one about a self-defense instruction and whether defense counsel would be permitted to argue self-defense to the jury, this exchange clearly was not a charging conference. Significantly, there was no written request to charge submitted by defendant in accordance with Rule 30 of the Superior Court Rules of Criminal Procedure. It is my opinion that our holding in Davis must be limited to cases in which the objection is raised on the record at a charging conference or charging hearing, after counsel has been provided with the instructions the court intends to deliver. Otherwise, we are embarking upon judicially created exceptions to our Rules of Criminal Procedure to be applied on an ad hoc basis. Such a practice will lead to inconsistent results and is wrong.

Second, and more significantly, in Davis, this Court was not confronted with a situation in which defense counsel went to sidebar and declared that he had no objection to the court's instructions. In Davis, defense counsel proffered several objections at sidebar that were in addition to those raised during the earlier hearing on jury instructions. See Davis, 131 A.3d at 691. In the case at bar, defense counsel did not simply fail to object. He went much further. After the trial justice charged the jury, she asked the attorneys at a sidebar conference, "Any exceptions to the charge?" Defense counsel responded, "No exception." Words have meaning. "No exception" means no exception. It does not mean no exception other than what was discussed earlier or no exception other than the objection to the failure to give a self-defense instruction.

In my opinion, Davis should not stand for, nor should it be read as having created, a court-made escape clause for cases in which counsel declares that he has "[n]o exception" or no objection to the charge. If a party wishes to preserve his objection to the jury charge, he or she should say so when asked on the record if he or she has any objection after the charge is given.

- 16 -

In this case, defense counsel never made an objection at any point in the trial. After today, a defendant could silently abandon, as a matter of trial strategy, a request for a particular jury instruction and then, if the strategy backfires, claim on appeal that the issue nevertheless was preserved under the majority opinion in this case. This Court has been careful to guard against such a situation. In State v. Cotty, 899 A.2d 482, 496-97 (R.I. 2006), this Court declared that the defendant failed to preserve for appellate review any objection to the trial justice's refusal to give a particular instruction (request No. 30) relating to character evidence concerning the complainant. After the initial charge to the jury, defense counsel objected to the failure of the trial justice to give several instructions, including request No. 30, whereupon the court gave another series of instructions that did not include request No. 30. Id. at 497. When the trial justice again inquired of counsel if he had any objections, defense counsel responded, "No, Judge, it's fine." Id. This Court declared that the objection was not preserved for appellate review because

> "[t]his response could reasonably be understood to mean (1) that defense counsel was satisfied that the instructions given by the trial justice after [the] defendant's objection had cured any perceived error contained therein or (2) that defense counsel, for tactical reasons, had opted not to pursue the matter further. If, at the end of the trial justice's supplemental charge to the jury, [the] defendant still felt that the substance of the content of request No. 30 had been omitted improperly, [the] defendant should have distinctly stated his objection and the grounds for same on the record at that time." Id. (emphasis added).

In the case before us, because we are confronted with an affirmative response by defense counsel that he had no exception to the trial justice's instructions to the jury, we should follow our holding in Cotty.

More fundamentally, I am of the opinion that the majority's decision today extends Davis and is a marked departure from the plain text of Rule 30. In pertinent part, Rule 30 provides that

- 17 -

"[n]o party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection." (Emphasis added.) This means that, in order to assign error to any portion of a jury charge or an omission from the charge, a party must object to the charge—and that cannot be done unless the charge has been given. See State v. Williams, 432 A.2d 667, 669 (R.I. 1981) (explaining that, under Rule 30, "an objection at the conclusion of the charge [is] essential to preserve the claim of error"). Unless, as was the situation in Davis, a party actually has the written instructions in hand, I am hard-pressed to countenance a situation in which a party preserves for appellate review an objection to jury instructions that have not yet been given.

Significantly, in this state, Rule 30 is "patterned upon" Rule 30 of the Federal Rules of Criminal Procedure (Federal Rule 30). Reporter's Notes to Super. R. Crim. P. 30 at 621. The practice in the federal courts, at least in the United States Court of Appeals for the First Circuit, under the version upon which Rule 30 was patterned as well as under the current version, is that an objection must be made after the charge is given and before the jury retires to deliberate. Prior to 2002, Federal Rule 30 contained nearly identical language to that contained in our Rule 30: "No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." United States v. O'Connor, 28 F.3d 218, 221 (1st Cir. 1994) (quoting Federal Rule 30). Although the pertinent language of the federal rule was amended in 2002, "[t]he amendment [did] not address the issue of whether objections to the instructions must be renewed after the instructions are given[] in order to preserve a claim of error. No change in practice [was] intended by the amendment." Federal

- 18 -

Rule 30, Advisory Committee Notes, 2002 Amendments (emphasis added).  Consistent with the explanation given in the Advisory Committee Notes to Federal Rule 30, the First Circuit has continued to apply the preservation rule that existed in that circuit before the 2002 amendment. See, e.g., United States v. Meadows, 571 F.3d 131, 146 (1st Cir. 2009); see also United States v. Gemma, 818 F.3d 23, 38 (1st Cir. 2016).

Thus, at the time when Federal Rule 30 contained language nearly identical to that contained in our Rule 30, federal law, which serves as our guidepost, was abundantly clear: In order to be preserved for appellate review, the objection must be made after the charge was given to the jury.[3]  The 2002 amendment did not change that law in any way.  Our learned colleagues on the First Circuit have explained:

> "As we have repeatedly held, [Federal Rule 30] means what it says.  A party may not claim error in the judge's charge to the jury unless that party 'objects' after the judge gives the charge but before the 'jury retires,' and, when objecting the party must 'stat[e] * * * distinctly the matter to which that party objects and the grounds of that objection.'"  O'Connor, 28 F.3d at 221 (quoting United States v. Wilkinson, 926 F.2d 22, 26 (1st Cir. 1991) (Breyer, C.J.), overruled in part on other grounds as stated in United States v. Vázquez, 724 F.3d 15, 22 (1st Cir. 2013)).

See also Meadows, 571 F.3d at 146  ("To preserve an objection to a jury instruction under [Federal Rule 30], a litigant must lodge a specific objection and state the grounds for the objection after the court has charged the jury and before the jury begins deliberations. * * * Objections registered during pre-charge hearings are insufficient to preserve the issue." (quoting United States v. Roberson, 459 F.3d 39, 45 (1st Cir. 2006))).  This Court has never been

---

[3] "This [C]ourt has stated previously that where the federal rule and our state rule of procedure are substantially similar, we will look to the federal courts for guidance or interpretation of our own rule." State v. Brown, 88 A.3d 1101, 1110 n.7 (R.I. 2014) (quoting Henderson v. Newport County Regional Young Men's Christian Association, 966 A.2d 1242, 1246 (R.I. 2009)).

- 19 -

confronted with a case requiring us to decide whether, in the absence of a charging conference, an objection to a jury charge made before the charge is given to the jury suffices to preserve the issue for our review. I am persuaded by the soundness of the First Circuit's consistent interpretation of either version of Federal Rule 30: that the rule requires that an objection must be made after the charge is given; if no such post-charge objection is made, a pre-charge objection cannot preserve the claim of error.[4]

Because of my conclusion that the text of Rule 30 mandates that a litigant object to the jury charge after it is given, I cannot join the majority opinion in this case. In <u>Davis</u>, 131 A.3d at 691, this Court concluded that "we would be elevating form over substance if we were to hold that [the] defendant failed to adequately preserve the issue of the trial justice's denial of a request for a limiting instruction." The majority invokes a similar rationale in this case. I appreciate the concerns of my colleagues, but, in my opinion, there is no place for this sympathy. When an attorney goes to sidebar after the trial justice instructs the jury and states "[n]o exception" to the charge, particularly when that lawyer has never before articulated an objection on the record, the issue is closed.

The conclusion that defendant failed to preserve this issue because he failed to object after the charge was given may well represent the elevation of form over substance, but it is important to consider precisely why that is necessary. In my opinion, the text of Rule 30

---

[4] I note that in <u>State v. Palmer</u>, 962 A.2d 758, 765-66 (R.I. 2009), this Court held that, notwithstanding the defendant's pre-charge objection to the trial justice's indication that he would give the jury a flight instruction, the defendant failed to preserve the issue for our review when he failed to object after the charge was given because the trial justice told the attorneys that objections to the charge should be made after it was given. In a footnote, we added that "[w]e are aware that Rule 30 of the Superior Court Rules of Criminal Procedure does not explicitly mandate that objections to instructions be made <u>after</u> the instructions are given." <u>Id.</u> at 766 n.5. In my opinion, this comment—contained in a footnote—about what the rule does not "explicitly mandate" overlooks the First Circuit's persuasive interpretation of a once similarly worded rule upon which Rule 30 was patterned.

- 20 -

mandates that objections to the jury charge must be made after the charge is given in order to be properly preserved. It is the text of the rule that commands the triumph of form over substance, and we fail to fulfill our roles as judges when we cease to enforce clear rules whenever we deem the result unpalatable. After all, the drawbacks of a bright-line rule often go hand in hand with its virtues. Furthermore, a hard-and-fast rule provides clear guidance to the bench and bar.

To the extent that Davis represented the first step in a judicial departure from the language of Rule 30, this case is a leap into the unknown world of judicial fiat. It is a journey upon which I decline to embark. Unless and until Rule 30 is amended, it should be enforced as written. Consequently, I respectfully dissent.



**TITLE OF CASE:**     State v. Juan Soler.

**CASE NO:**     No. 2013-241-C.A.
                 (P2/05-3230A)

**COURT:**     Supreme Court

**DATE OPINION FILED:**   July 12, 2016

**JUSTICES:**     Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**     Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**     Providence County Superior Court

**JUDGE FROM LOWER COURT**:

          Associate Justice Netti C. Vogel

**ATTORNEYS ON APPEAL:**

          For State:   Christopher R. Bush
                        Department of Attorney General

          For Defendant:   Kara J. Maguire
                           Office of the Public Defender